UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
CORPUS CHRISTI DIVISION

| | | |
|---|---|---|
| JIMMY HORACE OAKLEY, | § | |
| | § | |
| Plaintiff, | § | |
| VS. | § | CIVIL ACTION NO. 2:13-CV-102 |
| | § | |
| L. HUDSON, | § | |
| | § | |
| Defendant. | § | |

## OPINION AND ORDER DISMISSING CERTAIN CLAIMS AND RETAINING CASE

This civil rights action was filed by a state prisoner pursuant to 42 U.S.C. § 1983.

Under the Prison Litigation Reform Act, Pub. L. No. 104-134, 110 Stat. 1321 (1996), any prisoner action brought under federal law must be dismissed if the complaint is frivolous, malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief from a defendant immune from such relief. See 42 U.S.C. § 1997e(c); 28 U.S.C. §§ 1915(e)(2), 1915A. Plaintiff's action is subject to screening regardless whether he prepays the entire filing fee or proceeds as a pauper. Ruiz v. United States, 160 F.3d 273, 274 (5th Cir. 1998) (per curiam); Martin v. Scott, 156 F.3d 578, 580 (5th Cir. 1998) (per curiam). Plaintiff's *pro se* complaint must be read indulgently, Haines v. Kerner, 404 U.S. 519, 520 (1972), and his allegations must be accepted as true, unless they are clearly irrational or wholly incredible, Denton v. Hernandez, 504 U.S. 25, 33 (1992).

Applying these standards, plaintiff's Eighth Amendment claim alleging deliberate indifference to his serious medical needs against Nurse Practitioner ("N.P.") Lori Hudson is retained, and service shall be ordered on this defendant in her individual capacity. Plaintiff's remaining claims against the remaining defendants are dismissed for failure to state a claim and/or as frivolous pursuant to 28 U.S.C. § 1915(e)(2)(B) and § 1915A(b)(1).

## I. JURISDICTION

The Court has federal question jurisdiction over this civil rights action pursuant to 28 U.S.C. § 1331. Upon consent of the plaintiff, this case was referred to the undersigned United States magistrate judge to conduct all further proceedings, including entry of final judgment. See 28 U.S.C. § 636(c).

## II. FACTUAL ALLEGATIONS

Plaintiff is an inmate in the Texas Department of Criminal Justice, Criminal Institutions Division ("TDCJ-CID"), and is currently incarcerated at the Polunsky Unit in Livingston, Texas, although his complaint concerns events that occurred while he was housed at both the Connally Unit in Kenedy, Texas, and the McConnell Unit in Beeville, Texas. In particular, plaintiff claims that on March 25, 2011, while at the Connally Unit, he was assaulted by another offender, LaDaryl Waddleton,[1] who broke plaintiff's jaw. Plaintiff claims that the Connally Unit warden, Kenneth Bright, failed to protect him

---

[1] In his amended complaint, D.E. 12, plaintiff identifies Offender Waddleton as a defendant. (D.E. 12 at 3). However, as explained to plaintiff, Offender Waddleton is a private individual and is not a "state actor" for purposes of § 1983 liability. To the extent plaintiff intended to name Waddleton as a defendant, all claims against him are dismissed.

from the assault because he failed to ensure that the correctional officers maintained proper security watches. He claims that Officer John Doe #1 was also deliberately indifferent to his health and safety because this officer was the rover responsible for patrolling D-space, but he "disappeared" and was not doing his job on the day of the assault.

Plaintiff underwent surgery for his broken jaw at Hospital Galveston. Plaintiff claims his oral surgeons, Dr. Kenneth David Haynes and Dr. John Doe #2, a supervising physician, were deliberately indifferent to his serious medical needs because they failed to ensure that he attend his follow-up visits, resulting in an infection, complications, and ultimately requiring plaintiff to undergo a second jaw surgery. Finally, he is suing N.P. Hudson alleging deliberate indifferent to his serious medical needs because she failed to provide him with the dental necessities, including wax, toothpaste, and a toothbrush, following the surgery, and failed to have him transported to Hospital Galveston for his first post-surgery appointment.[2]

A Spears[2] hearing was held on March 28, 2013. The following allegations were made in plaintiff's original complaint (D.E. 1), amended complaint (D.E. 12), supplemental complaint (D.E. 16), or at the hearing:

---

[2] Plaintiff testified that defendant Hudson is the "medical provider" at the McConnell Unit, and he believes she is a doctor. Based on previous prisoner lawsuits, it is believed that Ms. Hudson is a nurse practitioner. If necessary, Ms. Hudson can clarify her position in her answer.
[2] Spears v. McCotter, 766 F.2d 179 (5th Cir. 1985); see also Eason v. Holt, 73 F.3d 600, 603 (5th Cir. 1996) (stating that testimony given at a Spears hearing is incorporated into the pleadings).

On March 25, 2011 at 6:55 p.m., Offender Waddleton assaulted plaintiff in D-space, breaking plaintiff's jaw. No officers were present in D-space at the time of the assault, although Officer John Doe #1 was scheduled to be the rover there at that time. Prior to the assault, plaintiff had written I-60s to Warden Bright and other Connally Unit officials complaining that the security staff were not doing their jobs properly and that inmate-on-inmate violence was rampant at the Connally Unit; however, Warden Bright did not respond to plaintiff's I-60 and the unit remained unreasonably dangerous. Although plaintiff had problems with Offender Waddleton prior to the assault, he never told a Connally Unit official because he believed "snitching" would do him more harm than good.

Following the March 25, 2011 assault, plaintiff was taken to Hospital Galveston for his injuries, and on March 27, 2011, plaintiff was seen by Dr. Haynes, a dentist and oral surgeon. Dr. Haynes told plaintiff that he would need surgery to realign his jaw, and that following the surgery, he should be housed by himself until his jaw healed.

On March 29, 2011, plaintiff underwent jaw surgery, and his jaws were wired shut.

On April 4, 2011, plaintiff was released from Hospital Galveston and transported to the McConnell Unit for recovery.[3] Plaintiff was prescribed a 10-day course of antibiotics upon his discharge.

---

[3] The McConnell Unit is the designated unit for providing 24-hr care for jaw surgery patients. (D.E. 16 at 5).

Plaintiff was scheduled to return to Hospital Galveston on April 11, 2011 for follow-up after his jaw surgery. At the McConnell Unit, N.P. Hudson was responsible for providing dental necessities and scheduling follow-up appointments to Hospital Galveston. N.P. Hudson failed to arrange for plaintiff to attend his April 11, 2011 follow-up appointment, and as a consequence, he missed it. In addition, plaintiff had no wax, tooth brush, or tooth powder for his oral hygiene needs.

By the third week following his jaw surgery, it was obvious that plaintiff had an infection in his jaw; the gums had swelled and pulled away from the teeth and bone. Plaintiff submitted a sick call request ("SCR") to medical, but received no reply.

On April 22, 2011, Nurse Sammy Gregory noticed the condition of plaintiff's mouth and indicated that plaintiff needed medical attention. Nurse Gregory was unable to make an appointment with N.P. Hudson, but he did secure plaintiff an appointment with the unit dentist.

On April 26, 2011, plaintiff was seen by the McConnell Unit dentist for the infection in his mouth. The dentist prescribed a second course of antibiotics. He noted that plaintiff should have received a toothbrush, tooth powder, dental floss, and wax when he arrived at the McConnell Unit. Plaintiff claimed that he had been asking N.P. Hudson for dental necessities every day.

On May 2, 2011, N.P. Hudson called plaintiff in for an examination. She observed that plaintiff's gums were swollen and bleeding, and concluded that he needed to be seen by the doctors at Hospital Galveston. However, upon checking plaintiff's file, N.P. Hudson discovered that plaintiff was already scheduled for an appointment on May

9, 2011 to have the jaw wires cut, and therefore, no other appointment was necessary. N.P. Hudson gave plaintiff gauze for his mouth.

On May 9, 2011, plaintiff was seen at Hospital Galveston by Dr. Haynes, Dr. John Doe #2, and Dr. Thoreson. Plaintiff's gums were inflamed, infected and bleeding, but Dr. Haynes did not look at plaintiff's gums or listen to his complaints, stating that he could not see into plaintiff's mouth, and therefore, he would not try. Dr. Haynes turned plaintiff over to Dr. Thoreson who cut the jaw wires at that time. Plaintiff was scheduled to return to Hospital Galveston on May 16, 2011 for removal of the wires. Plaintiff was returned to the McConnell Unit.

On May 10, 2011, Nurse Gregory noted that plaintiff's mouth infection had gotten worse, and he arranged for plaintiff to be seen by the unit dentist again. The unit dentist prescribed a third round of antibiotics and told plaintiff that he was limited in what he could do because plaintiff was under the primary care of Dr. Haynes. He told plaintiff that when he saw Dr. Haynes again on May 16, 2011, he should ask Dr. Haynes to lance and drain the gum infection.

On May 16, 2011, plaintiff returned to Hospital Galveston to have the wires removed from his jaw. After the wires were removed, Dr. Pampalon, a resident, stated that the infection would need to be biopsied. Dr. Pampalon believed that the infection had come from the hardware at the fracture site. Plaintiff's gums were biopsied.

Following his May 16, 2011 appointment at Hospital Galveston, plaintiff was supposed to be returned to the McConnell Unit; however, he was sent to the Darrington Unit in error. There, plaintiff did not have a special diet and his dental block fell out.

On May 26, 2011, the Darrington Unit doctor noted that plaintiff's gums were still infected and that bone was exposed. Eventually, plaintiff was sent back to Hospital Galveston in June 2011, where it was determined that certain teeth, bone, and tissue would need to be extracted and removed via surgery.

On June 24, 2011, plaintiff underwent a second surgery performed by Dr. Haynes and Dr. John Doe #2. He was prescribed antibiotics and pain medication, and returned to the McConnell Unit.

On July 1, 2011, plaintiff was seen by N.P. Hudson. Plaintiff complained that he was not getting his antibiotics, and she responded that plaintiff was incorrect about the discharge orders. However, upon his persistence, N.P. Hudson consulted the discharge orders and determined that plaintiff was correct. Although N.P. Hudson apologized, plaintiff had gone one week without the antibiotic following the second surgery, and the infection had reoccurred.

On August 22, 2011, the wiring from the second surgery was removed. Plaintiff complained that his jaw was not aligned properly. Dr. Haynes stated that it was the swelling and would improve over time.

On August 24, 2011, plaintiff submitted an I-60 complaining about the alignment of his jaw, and also noting that he had no feeling in his right lip and chin. He never received a response to the I-60 before he was transferred back to the Connally Unit.

Through this action, plaintiff seeks declaratory and injunctive relief, and damages for his pain and suffering and personal injuries.

### III.  DISCUSSION

**A.     Legal Standard.**

Plaintiff's action may be dismissed for failure to state a claim upon which relief can be granted despite his failure to exhaust administrative remedies.  42 U.S.C. § 1997e(c)(2).  The Supreme Court has held that "[t]o state a claim under 42 U.S.C. § 1983, a plaintiff must allege the violation of a right secured by the Constitution and laws of the United States, and must show that the alleged deprivation was committed by a person acting under color of state law."  West v. Atkins, 487 U.S. 42, 48 (1988) (citations omitted); accord Biliski v. Harborth, 55 F.3d 160, 162 (5th Cir. 1995) (per curiam).  An action may be dismissed for failure to state a claim when it is clear that the prisoner can prove no set of facts in support of his claim entitling him to relief.  Oliver v. Scott, 276 F.3d 736, 740 (5th Cir. 2002) (citation omitted).  The complaint must be liberally construed in favor of the prisoner and the truth of all pleaded facts must be assumed.  Id.

**B.     Official capacity claims.**

Because plaintiff did not specify, it is assumed that he is suing the individual defendants in both their individual and official capacities.  To the extent he is suing these individual state employees for damages in their official capacities, those claims are against the state itself, and are barred by the Eleventh Amendment.  See  Oliver v. Scott, 276 F.3d 736, 742 (5th Cir. 2002) ("[T]he Eleventh Amendment bars recovering § 1983 money damages from [state] officers in their official capacities."). Thus, it is respectfully recommended that plaintiff's claims for monetary damages against all named defendants be dismissed as barred by the Eleventh Amendment.

**C.     Analysis of alleged constitutional violations.**

**1.     Failure to protect.**

Plaintiff claims that Warden Bright and Officer John Doe #1 violated his Eighth Amendment right to be free from cruel and unusual punishment by failing to protect him from the assault by Offender Waddleton.

Prison officials have a duty to protect prisoners from violence at the hand of other prisoners. Cantu v. Jones, 293 F.3d 839, 844 (5th Cir. 2002) (citing Farmer v. Brennan, 511 U.S. 825, 832 (1994)). A prison official is deliberately indifferent to the inmate's safety if the official knows that the inmate faces a substantial risk of serious harm and disregards that risk by failing to take reasonable measures to abate it. Cantu, 293 F.3d at 844 (citing Farmer, 511 at 847). Deliberate indifference describes a state of mind "more blameworthy than negligence;" there must be "more than ordinary lack of due care for the prisoner's interests or safety." Farmer, 511 U.S. at 835.

At the hearing, plaintiff testified that Warden Bright failed to make sure that the correctional officers were doing their jobs, and therefore, as the head of the Connally Unit, he was ultimately responsible for plaintiff being attacked. However, to state a cause of action under § 1983, a plaintiff must identify defendants who were either personally involved in the constitutional violation or whose acts are causally connected to the constitutional violation alleged. Woods v. Edwards, 51 F.3d 577, 583 (5th Cir. 1995). In addition, it is well established that a § 1983 plaintiff cannot obtain damages or injunctive relief from a policy-maker or supervisor solely on a theory of *respondeat superior*. Beattie v. Madison County School Dist., 254 F.3d 595, 600 n.2 (5th Cir. 1983)

(citing Monell v. New York City Dep't of Soc. Servs., 436 U.S. 658, 690 (1978)). "[S]upervisory officials are not liable for the actions of subordinates on any theory of vicarious liability." Thompson v. Upshur County, 245 F.3d 447, 459 (5th Cir. 2001) (quoting Thompkins v. Belt, 828 F.2d 298, 303 (5th Cir. 1987). "[Section] 1983 does not give a cause of action based on the conduct of subordinates. Personal involvement is an essential element of a civil rights cause of action." Thompson v. Steele, 709 F.2d 381, 382 (5th Cir.), cert. denied, 464 U.S. 897 (1983). A supervisor who is not personally involved is liable under the theory of "supervisory liability" only if he has implemented "a policy so deficient that the policy itself is a repudiation of constitutional rights and is the moving force of the constitutional violation." Thompkins, 828 F.2d at 304. "Supervisory officials may be held liable only if: (i) they affirmatively participate in acts that cause constitutional deprivation; or (ii) implement unconstitutional policies that causally result in plaintiff's injuries." Mouille v. City of Live Oak, Tex., 977 F.2d 924, 929 (5th Cir. 1992).

     Plaintiff offers no facts to suggest that Warden Bright had any personal knowledge that plaintiff was at a risk of harm to be attacked by Offender Waddleton, or that he implemented any unconstitutional policy. The fact that plaintiff might have directed an I-60 complaint to Warden Bright complaining that the security officers were "not doing their jobs" does not equate with Warden Bright being personally involved in a constitutional violation. Indeed, the Fifth Circuit has held that, given the size of the TDCJ and the operations that wardens oversee, they cannot be expected to intervene personally in response to every inmate complaint or letter they receive. Johnson v.

Johnson, 385 F.3d 503, 526 (5th Cir. 2004). In addition, a prisoner has no constitutional right to a response to a grievance. Geiger v. Jowers, 404 F.3d 371, 373 (5th Cir. 2005) (prisoners do not have a federally protected liberty interest in having grievances investigated or resolved). Thus, plaintiff fails to state a cognizable constitutional claim against Warden Bright, and his claims against this defendant are dismissed.

Plaintiff argues that Officer John Doe #1 violated his constitutional rights because he was not patrolling the D-space at the time of the assault as he should have been. However, plaintiff admitted that he did not tell any official that he was having problems with Offender Waddleton, or provide any information by which Officer John Doe #1 could have or should have known that plaintiff's was at a greater risk of harm, and then intentionally ignored that risk. Prisons are inherently dangerous places, and plaintiff's allegations do not suggest that he was exposed to conditions considerably more dangerous than those in normal prison life. Farmer, 511 U.S. at 844 (prison officials who respond reasonably to a risk, even if the harm is not ultimately averted, cannot be found liable under the Eighth Amendment). Indeed, prison officials are not expected to prevent all inmate-on-inmate violence. Adames v. Perez, 331 F.3d 508, 512 (5th Cir. 2003). Taking plaintiff's allegations as true, he fails to establish that Officer John Doe #1 was deliberately indifferent to his health and safety, and his claims against this defendant are dismissed.

### 2. Deliberate indifference to serious medical needs.

Plaintiff contends that N.P. Hudson, Dr. Haynes, and Dr. John Doe #1 were deliberately indifferent to his serious medical needs.

Deliberate indifference to a prisoner's serious illness or injury states a cause of action under § 1983." Estelle v. Gamble, 429 U.S. 97, 105 (1976). "Deliberate indifference describes a state of mind more blameworthy than negligence;" there must be "more than ordinary lack of due care for the prisoner's interests or safety." Farmer, 511 U.S. at 835 (1994) (construing Estelle, 429 U.S. at 104). To establish an Eighth Amendment violation, an inmate must show that a prison official "act[ed] with deliberate indifference [and] exposed a prisoner to a sufficiently substantial risk of serious damage to his future health." Id. at 37.

A mere disagreement with the level and type of treatment is not actionable under the Eighth Amendment. Estelle, 429 U.S. at 107; Norton v. Dimazana, 122 F.3d 286, 292 (5th Cir. 1997); Banuelos v. McFarland, 41 F.3d 232, 235 (5th Cir. 1995); Young v. Gray, 560 F.2d 201 (5th Cir. 1977). An incorrect diagnosis does not state an Eighth Amendment claim because the deliberate indifference standard has not been met. Domino v. Texas Dep't of Criminal Justice, 239 F.3d 752, 756 (5th Cir. 2001). A "plaintiff must show that the officials refused to treat him, ignored his complaints, intentionally treated him incorrectly, or engaged in any similar conduct that would clearly evince a wanton disregard for any serious medical needs." Id. (quoting Johnson v. Treen, 759 F.2d 1236, 1238 (5th Cir. 1985)). Delay in treatment may be actionable under § 1983 only if there has been deliberate indifference and the delay results in substantial harm. Stewart v. Murphy, 174 F.3d 530, 537 (5th Cir. 1999); Mendoza v. Lynaugh, 989 F.2d 191, 195 (5th Cir. 1993). An inmate displaying diabetic symptoms conveys a

serious medical need, and a defendant's failure to respond to that need may constitute deliberate indifference.  Gobert v. Caldwell, 463 F.3d 399, 345 n. 12 (5th Cir. 2006).

Taking plaintiff's allegations as true, plaintiff has alleged sufficient facts for purposes of §1915A screening to state a claim against N.P. Hudson.  Plaintiff testified that N.P. Hudson was personally in charge of scheduling and ensuring follow-up visits to Hospital Galveston following surgery, and also, for providing the basic oral hygiene products to patients after having jaw surgery.  Indeed, plaintiff testified that the McConnell Unit is the designated unit for inmates recovering from jaw surgery, and therefore, the importance of post-op care would be paramount.  Plaintiff claims that he requested dental necessities daily, and also requested to see N.P. Hudson, but received no reply.  Even Nurse Gregory was unsuccessful in getting plaintiff an appointment with N.P. Hudson, although he was able to get plaintiff an appointment with the unit dentist, who prescribed antibiotics.  Here, the failure of N.P. Hudson to arrange for plaintiff's transportation back to Hospital Galveston, combined with the lack of attention to his needs and complaints, suggests that she was aware of his serious medical needs but ignored them.  Thus, plaintiff's claims against N.P. Hudson will be retained, and service ordered on this defendant in her individual capacity.

Plaintiff's claims against his oral surgeons do not meet the standard of deliberate indifference.  "Facts underlying a claim of deliberate indifference must clearly evince the medical need in question and the alleged official dereliction."  Johnson v. Treon, 759 at 1238.  The legal conclusion of deliberate indifference "must rest on facts clearly evincing 'wanton' actions on the part of the defendants."  Id.  The Supreme Court has described

"wanton" actions as those causing the unnecessary infliction of pain. Erickson v. Pardus, 551 U.S. 89, 90 (2007) (per curiam) (citation omitted). As Hospital Galveston physicians, neither Dr. Haynes nor Dr. John Doe #1 had the responsibility or the authority to ensure that plaintiff returned for his follow-up visits timely, or even at all. Unlike P.A. Hudson, they were not responsible for his post-op care and had no opportunity to observe him on a day-by-day basis nor receive his complaints. Although plaintiff objects to the quality of care he received on May 9, 2011 when the wires were cut, the mere fact that Dr. Haynes stated that he could not look in plaintiff's mouth at that time is no more than a mere disagreement with the course of treatment, which is not actionable. Varnado v. Collins, 920 F.2d 320, 321 (5th Cir. 1991) (merely alleging that a prison doctor should have undertaken additional diagnostic measures or utilized an alternative method of treatment does not elevate a claim to a constitutional dimension). Indeed, Dr. Haynes and Dr. John Doe #1 could have surmised that plaintiff was on a second round of antibiotics and that, even if he had an infection, the antibiotics would be sufficient. There is no evidence that Dr. Haynes or Dr. John Doe #1 refused to treat plaintiff, and indeed, plaintiff received the care he was scheduled to receive that day as the wires were cut. At most, plaintiff's allegations state a claim for negligence, which is not actionable. Mendoza, 989 F.2d at 195.

### IV. CONCLUSION

For the reasons stated herein, plaintiff's Eighth Amendment claim alleging deliberate indifference to his serious medical needs against defendant N.P. Lori Hudson in her individual capacity is retained, and service shall be ordered. Plaintiff's remaining

claims against the remaining defendants are dismissed for failure to state a claim and/or as frivolous.

ORDERED this 11th day of July, 2013.

_____
B. JANICE ELLINGTON
UNITED STATES MAGISTRATE JUDGE