UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
CORPUS CHRISTI DIVISION

| JIMMY HORACE OAKLEY, | § | |
|---|---|---|
| | § | |
| Plaintiff, | § | |
| VS. | § | CIVIL ACTION NO. 2:13-CV-102 |
| | § | |
| L. HUDSON, | § | |
| | § | |
| Defendant. | § | |

**ORDER ADOPTING MEMORANDUM AND RECOMMENDATION
ON DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**

Pending before the Court is Defendant's Motion for Summary Judgment (D.E. 47). On June 24, 2014, United States Magistrate Judge B. Janice Ellington issued a Memorandum and Recommendation (D.E. 65), recommending that Defendant's Motion for Summary Judgment be granted. Plaintiff, Jimmy Horace Oakley (Oakley) filed his objections (D.E. 74) on or about November 10, 2014, after obtaining three Court orders extending the deadline for filing objections. D.E. 68, 70, 73.

In forty-three (43) pages, Oakley objects to summary judgment evidence, recites his version of the factual and procedural history of the case, addresses the exhaustion of remedies requirement, objects to the dismissal of his Eighth Amendment claim for deliberate indifference to serious medical needs, objects to any claim of qualified immunity, and requests a lawyer be appointed to assist him. The Court disregards the discussion of exhaustion of remedies because the Memorandum and Recommendation recommends ruling in Oakley's favor on that issue—a recommendation that Defendant

Nurse Practitioner (NP) Hudson has not challenged and that the Court adopts after a "plain error" review.

The Court does not reach the qualified immunity issue for the same reason that the Magistrate Judge did not reach that issue. This case is subject to disposition on the absence of a viable claim of deliberate indifference to serious medical needs and no affirmative defense of qualified immunity need be considered. Challenges to the summary judgment evidence and to the dismissal of the deliberate indifference claim are addressed below. Because of the disposition of the case, the Court DENIES the request for a court-appointed lawyer to prosecute Oakley's claims.

As a preliminary matter, Oakley appears to seek reconsideration of the denial of his claims against "the other officials" and "the oral surgeons . . . in each surgeon's official capacity" because the dismissal of his claims against them was allegedly an abuse of discretion and he made appropriate deliberate indifference claims against them. These complaints are outside the scope of the Memorandum and Recommendation under consideration here and are rejected as moot.

**General Evidentiary Objection**. Oakley prefaces his 17-page discussion of the facts with the statement that he objects to the summary judgment evidence. With one exception, he fails to articulate any particular legal objections to the competency or admissibility of the evidence. To preserve a claim of error, any objection to evidence must state the specific ground on which the error may be found. Fed. R. Civ. P. 103(a)(1)(B). Oakley's general objection does not direct this Court to any particular error

in the Magistrate Judge's acceptance of summary judgment evidence or the analysis of that evidence. Consequently, the general evidentiary objection is OVERRULED.

**Objection to Dr. Adams' Affidavit**. Oakley objects to the affidavit of Dr. Adams as being false and executed in bad faith. D.E. 74, p. 37. More specifically, he challenges Dr. Adams' qualifications because he is not a dentist. *Id.* However, for Dr. Adams' opinions to be admissible here, Dr. Adams must be qualified to opine as to the conduct of a nurse practitioner tending to a post-operative oral surgery patient. As a physician, Dr. Adams is qualified to render expert opinions in this case.

A physician's area of expertise ordinarily encompasses the standard of care applicable to nurses. *E.g., McDowell v. Brown*, 392 F.3d 1283, 1296 (11th Cir. 2004) (applying Georgia law); *Children's Medical Center of Dallas v. Durham*, 402 S.W.3d 391, 399 (Tex. App.—Dallas 2013, no pet.); *Hayes v. Carroll*, 314 S.W.3d 494, 504-05 (Tex. App.—Austin 2010, no pet.). Furthermore, an expert may be qualified to testify even though he is not a specialist in the particular branch of medicine for which the testimony is offered, as long as he has sufficient familiarity with the specific subject matter. *Blan v. Ali*, 7 S.W.3d 741, 745 (Tex. App.—Houston [14th Dist.] 1999, no pet.).

Here, Dr. Adams' affidavit reflects that he is a medical doctor with over 30 years' experience, nearly twelve of the most recent years being in the University of Texas Medical Branch Correctional Managed Care division. He is the Senior Medical Director for Outpatient Services, and at the time of Oakley's complaints, he was being seen as an outpatient. Nothing in Oakley's objections would support a finding that Dr. Adams is not qualified to offer an opinion about any of Oakley's complaints in this case. Admission

and consideration of Dr. Adams' affidavit is within the discretion of the Court. Fed. R. Civ. P. 702; *Viterbo v. Dow Chem. Co*., 826 F.2d 420, 422 (5th Cir. 1987).

Oakley has not provided any basis for his conclusion that the affidavit is false and a product of bad faith. To the contrary, it appears to be a straightforward assessment of the medical records and the respective duties of health care professionals within the bureaucratic strictures of the prison system. Oakley's objections to the affidavit of Dr. Adams are OVERRULED.

Oakley articulates some disputes regarding the accuracy of the medical records. While he maintains a number of complaints against his health care providers at different stages of his medical care, this Court is currently only concerned with complaints against NP Hudson. This Order thus focuses only on evidence and arguments regarding NP Hudson's conduct.

**April 11, 2011 Clinic Appointment**. Oakley clarifies his claims with respect to the fact that he did not go to the HG Oral Surgery Clinic on April 11, 2011. He faults NP Hudson—not for failure to schedule his return to the Clinic on that date—but for failing to arrange to have him transported back to that facility for his appointment on that date. D.E. 74, pp. 35-37. The record demonstrates that, despite the doctor's order that Oakley return for a follow up visit on April 11, 2011, the Clinic failed to schedule it. Adams Aff., D.E. 47-3, p. 3. As it was the Clinic's responsibility to schedule the appointment pursuant to its doctor's order (and not NP Hudson's) there can be no liability predicated against NP Hudson for the lack of an appointment. *Id*. at 6; Hudson Aff., D.E. 47-4, p. 3. With no scheduled appointment, there was no reason for NP Hudson to arrange to

transport Oakley to the Clinic on that date. In fact, Oakley does not include any complaints about events on that date in his summary judgment declaration. D.E. 58-1, p. 3. The Court OVERRULES any complaint regarding NP Hudson failing to transport Oakley to the Clinic on April 11, 2011.

**Two-Weeks' Suffering**. Oakley argues that NP Hudson was deliberately indifferent because she knew, from April 19, 2011 to May 2, 2011, that he had an infection in his jaw, was in pain, and she failed to do anything to relieve his condition over the course of those two weeks. Throughout that time, Oakley was treated in the McConnell Infirmary with "Inpatient Nursing Progress Notes" and "RN Assessments" that do not support Oakley's claims. *See* D.E. 49-7, p. 50 (MSJ Ex. A, 393; stating on April 19, 2011 "no distress"); D.E. 49-7, p. 43 (MSJ Ex. A, 386; stating on April 20, 2011 "pt up and about in his room" and "no new complaints"); D.E. 49-7, p. 41 (MSJ Ex. A, 384; stating on April 21, 2011, that patient's only complaint was food being too thick to eat through a straw).

It is not until April 22, 2011, that the progress notes state, "pt verbalized complains [sic] of bleeding behind teeth since last week, pt verbalized area started to swell and bleed. Pt verbalized currently not bleeding or draining." D.E. 49-7, p. 39 (MSJ Ex. A, 382). On that date, an "asap" provider appointment was requested. D.E. 49-7, p. 37 (MSJ Ex. A, 380). At that time, Oakley's medications included Motrin for pain. D.E. 49-7, pp. 33, 34, 36, 39. Again, on April 24, 2011, the notes state that patient is in "no distress." D.E. 49-7, p. 31 (MSJ Ex. A, 374). NP Hudson examined Oakley on April 25, 2011, and the notes show that Oakley complained that he "Had an episode of bleeding on

right lower gum line, none at this time" and he was told to notify them if there was any further bleeding. D.E. 49-7, p. 21-22 (MSJ Ex. A, 365).

The next day, with complaints of bleeding and drainage, Nurse Gregory made a dental referral. D.E. 49-7, p. 21 (MSJ Ex. A, 364). As a result of Oakley's same-day evaluation by Dentist Richard H. Turner, Oakley was prescribed an antibiotic. D.E. 49-7, p. 15-16 (MSJ Ex. A, 358-59). Dentist Turner indicated that Oakley was on track for a post-operative Clinic visit at Hospital Galveston. *Id.* Thereafter, Oakley did not express any new or acute discomfort (other than a problem with athlete's foot) until he claimed that the infection had moved to the front of his jaw on April 30, 2011. D.E. 49-7, pp. 7, 9 (MSJ Ex. A, 350-52). On May 2, 2011, NP Hudson examined Oakley, consulted Dentist Turner, and accelerated Oakley's post-operative appointment with the Clinic from May 16 to May 9, 2011. D.E. 49-7, p. 1 (MSJ Ex. A, 344); 49-6, p. 44 (MSJ Ex. A, 339). In the meantime, he was still on the antibiotic that Dentist Turner had prescribed and NP Hudson added a prescription for Tylenol. D.E. 49-6, pp. 45-47 (MSJ Ex. A, 340-42).

Despite this evidence in the medical records, Oakley claims that he complained of being in significant pain throughout this time and that he reported it to the nurses. D.E. 74, p. 32. Even if true, this is not evidence that he reported his pain to NP Hudson so as to charge her with deliberate indifference. While Oakley claims in his objections that Nurse Gregory reported Oakley's infection, pain, and suffering to NP Hudson on April 19, 2011 and again on April 22, 2011,[1] that is not recited in the medical records or in his affidavit in response to the motion for summary judgment. D.E. 58-1, p. 3. Oakley

---

[1] In his objections, Oakley's representation as to when NP Hudson first knew about his claimed infection varies from April 19, 2011 to April 26, 2011 in the same paragraph. D.E. 74, p. 8.

further does not deny that he was given pain medications as reflected in the progress notes throughout this time. The Court OVERRULES any objection that deliberate indifference was demonstrated by NP Hudson's alleged knowledge that Oakley was in pain and she allowed him to suffer unnecessarily.

**Failure to Treat Infection**. Oakley also complains that, when NP Hudson finally examined his condition, she only provided gauze squares to absorb the bleeding, disregarding the infection. D.E. 74, pp. 17, 32-33. However, as the medical records reflect and Oakley has not controverted, he was at that time taking an antibiotic for the infection that had been prescribed by Dentist Turner, and NP Hudson further consulted with Dentist Turner to see if he wanted to see Oakley (and he did not). D.E. 49-7, pp. 1-2. Instead, they deferred to the Oral Surgery Clinic and its post-operative care. *Id*.

Oakley claims that he always had a post-operative appointment for May 9, 2011, such that NP Hudson did not "accelerate it" from May 16 as indicated in the records. The resolution of this disputed fact is not material to a determination whether NP Hudson was deliberately indifferent because the uncontroverted facts show that she examined him, noted that he was on an antibiotic, consulted with the dentist who had prescribed the antibiotic, and ensured that Oakley would be seen in a week's time in the Clinic. The Court OVERRULES any objection based on the argument that NP Hudson disregarded Oakley's infection or failed to treat it because uncontroverted evidence shows that she was aware, that he was medicated, and that he was scheduled for further monitoring.

**Failure to Respond to I-60 Request**. Oakley further objects to the summary judgment on the basis that he filled out an I-60 sick call request on June 6, 2011, which

7 / 10

NP Hudson received on June 7, 2011, and she ignored it. He claims she did not give him an appointment before he was discharged from the McConnell Unit. D.E. 74, p. 17. In his own recitation of the facts, however, Oakley admits that he was seen on June 8, 2011, by Dr. Whitt, who prescribed a new antibiotic and referred Oakley back to the HG Oral Surgery Clinic for follow-up. D.E. 74, pp. 10-11. Any inaction by NP Hudson is immaterial because Oakley was getting medical attention during the time in which he alleges she ignored his medical condition. The Court OVERRULES this objection.

**Failure to Register Medications in Discharge Order**. On July 2, 2011, a week following his second surgery, NP Hudson represented to Oakley that his discharge orders did not include any antibiotics. When Oakley pressed the issue, according to his own account, NP Hudson consulted the records, realized her mistake, apologized, and provided medications. D.E. 74, p. 14. Nonetheless, Oakley objects to the summary judgment and predicates a deliberate indifference claim against NP Hudson on her actions causing him to go a week without his prescribed antibiotic prior to the July 1, 2011 correction.

Nothing in the evidence supports a claim that NP Hudson subjectively knew that Oakley had been prescribed medication and that she deliberately failed to properly process his surgery discharge orders before July 1, 2011, so as to deprive him of those medications, knowing it would increase his risk of infection. At best, Oakley's evidence of this fact scenario supports a negligence claim and does not rise to the level of a deliberate indifference claim. Inadvertent failure to provide adequate medical care is not cruel and unusual punishment. *Estelle v. Gamble*, 429 U.S. 97, 105-06 (1976). The

health care provider must know of and disregard an excessive risk to health or safety before a deliberate indifference claim is demonstrated. *Farmer v. Brennan*, 511 U.S. 825, 837 (1994). The Court OVERRULES this objection.

**Objection to Outcome of Surgeries**. On August 24, 2011, Oakley filled out an I-60 to NP Hudson regarding the outcome of the second operation. D.E. 74, pp. 15-16. After complaining to the HG doctors of pain and numbness that he did not experience after the first surgery, he claims he did not receive a response from NP Hudson before he was shipped out to the Connally Unit on August 26, 2011. D.E. 49, p. 5 (MSJ Ex. A, 4). There, on August 26, 2011, he was told he would—and he did in fact—see a doctor three days later on the 29th. D.E. 49-14, pp. 13-16. Despite some efforts to alleviate this post-operative condition, Oakley claims it remains a problem.

Nothing in Oakley's objections indicates when NP Hudson allegedly received any I-60, what she knew about his condition as a result of the I-60, or what action he believes NP Hudson should have taken in the 48 hours, more or less, that he remained in the care of the McConnell Unit. Neither does he demonstrate how any medical care would have been effective to assist him. Instead, after being treated by doctors for his specific complaints, Oakley claims he is no better off and that the health care providers have told him that it is permanent and is called dysesthesia, a neurological condition. D.E. 74, p. 16. Under these circumstances, the factual allegations do not rise to the level of stating a claim for deliberate indifference to serious medical needs. *E.g., Merritt v. Faulkner*, 823 F.2d 1150, 1157 (7th Cir. 1987) (when a condition is untreatable, a patient cannot show

liability or causation with respect to "deliberate indifference"). The objection is OVERRULED.

**Cover-Up**. According to Oakley, NP Hudson participated with Hospital Galveston doctors in a cover-up of their failure to address his infection until after it had taken its toll. D.E. 74, p. 16. Nothing in the summary judgment evidence supports any claim that Oakley's condition was hidden or that NP Hudson was a participant in a conspiracy with anyone to cover up his care or the lack of care he received. A summary judgment motion cannot be defeated by unsubstantiated allegations. *E.g, Davis v. Fort Bend County*, 765 F.3d 480, 484 (5th Cir. 2014). The Court OVERRULES this objection.

Having reviewed the findings of fact, conclusions of law, and recommendations set forth in the Magistrate Judge's Memorandum and Recommendation, as well as Plaintiff's objections, and all other relevant documents in the record, and having made a *de novo* disposition of the portions of the Magistrate Judge's Memorandum and Recommendation to which objections were specifically directed, the Court **OVERRULES** Plaintiff's objections and **ADOPTS** as its own the findings and conclusions of the Magistrate Judge. Accordingly, Defendant's Motion for Summary Judgment (D.E. 47) is **GRANTED** and this action is **DISMISSED WITH PREJUDICE**.

ORDERED this 15th day of December, 2014.

_____
NELVA GONZALES RAMOS
UNITED STATES DISTRICT JUDGE